UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

```
------------------------------------------------------- x
                                          :
UNITED STATES OF AMERICA                  :    NO. 3:22 mj 113(RMS)
                                          :
v.                                        :    FEBRUARY 22, 2023
                                          :
APPLICATION FOR  ORDER                    :
------------------------------------------------------- x
```

## RULING ON MOTION FOR SANCTIONS

Movant Paul A. Boyne (the "movant" or "Mr. Boyne") has filed a motion for sanctions, (Doc. No. 22), in a magistrate judge proceeding in which the undersigned granted six separate orders requiring the disclosure of certain information pursuant to 18 U.S.C. § 2703(d).[1] (Doc. Nos. 2-4 and 11-13). The movant seeks to have the Court impose sanctions and attorney discipline against Assistant United States Attorneys ("AUSA"s) Neeraj Patel and Margaret Donovan. (*See id*. at 1-4). The movant also demands that the undersigned recuse himself. This is not the first time the movant has filed a motion asking for sanctions against a prosecutor and judicial officers in connection with the issuance of court orders and/or search warrants. *See, e.g.*, Doc. No. 13 in 3:16-mj-691; Doc. No. 13 in 3:16-mj-692; Doc. No. 13 in 3:16-mj-693. For the reasons set forth below, the movant's motion for sanctions, (Doc. No. 22), is **DENIED**.

---

[1] 18 U.S.C. § 2703, which is a part of the Stored Communications Act, allows a "governmental entity," such as a United States Attorney's Office, to apply for a court order requiring "a provider of electronic communication service or remote computing service to disclose a record or other information pertaining to a subscriber to or customer of such service." *See id.* at (b)-(c). "A court order for disclosure under subsection (b) or (c) may be issued by any court that is a court of competent jurisdiction and shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the . . . records or other information sought, are relevant and material to an ongoing criminal investigation." *Id.* at (d). For the purposes of this motion, the Court may refer to such an order on those applications as a "§ 2703(d) order."

1

**I.     BACKGROUND**

The movant is not one unfamiliar to this Court, and it is not the first motion for sanctions filed by him nor denied by the Court.  The movant's instant motion for sanctions has its genesis in a trio of search warrants originally granted under seal in 2016.  The instant motion for sanctions makes reference to these prior proceedings.

**A.     The 2016 Search Warrants and Motion for Sanctions[2]**

On November 30, 2016, United States Magistrate Judge Joan G. Margolis signed three search warrants directed to Google, Inc., Twitter, and Facebook, Inc., for information associated with accounts hosted on those services.  *See* Doc. Nos. 1, 1-1 in 3:16-mj-691;  Doc. Nos. 1, 1-1 in 3:16-mj-692; Doc. Nos. 1, 1-1 in 3:16-mj-693 (together, the "2016 Warrants").[3]  On the same date, the Court granted the government's applications for  non-disclosure orders and motions to seal the cases.  (Doc. Nos. 2, 5).  The cases were eventually unsealed on June 7, 2017.  (Doc. No. 10).

In general terms, the 2016 Warrants sought evidence for potential violations of the federal cyberstalking statute, 18 U.S.C. § 2261A, and potential interstate communications of threats, 18 U.S.C. § 875(c), in connection with online communications and social media posts expressing various grievances aimed a Connecticut family court judge.  (Doc. No. 1-1 at 1-3, 4).  The sworn affidavit attached to the warrant applications was signed by an FBI Special Agent.  (*Id.*).  The affidavit recounted a string of "sharp[]" emails sent by a person using the email addresses "charlotteobservenews1@gmail.com" and "charlotteobservenews@gmail.com," about the family

---

[2] "The Court may take judicial notice of documents filed in other cases and of public records." *Navin v. Wells Fargo Bank, N.A.*, 199 F. Supp. 3d 646, 650 (D. Conn. 2016).  *See Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir.2006) (noting that a court may take judicial notice of public records on a motion to dismiss only to establish their existence, not for the truth of the facts stated in them). No issue of law or fact in this ruling turns upon the 2016 search warrants.

[3] Because all three cases are substantially identical, all docket entry numbers in this section will only correspond with the docket of the 3:16-mj-693 case, seeking information from Facebook (the "Facebook Warrant"), unless otherwise noted.

court judge to various individuals, including to the United States Attorney for Connecticut at that time.  (*See, e.g.*, *id.* at ¶ 19; *see generally id.* at 4-9).  The affidavit also recounted the discovery of several "violent and disturbing" Twitter accounts, including one with the handle @NuttyJudge, which had posted violent imagery and private photos of the Connecticut judge's family taken from the private Facebook galleries of the judge's family members without the judge's or her family's knowledge or permission.  (*Id.* at ¶¶ 56-66).  According to the affidavit, the 2016 Warrants sought information from, *inter alia*, certain Facebook pages that that had been created and made to appear as if they were the Connecticut judge's as potential evidence of these suspected crimes.  (*Id.* at ¶¶ 9-10; *see id.* at Attachments A, B).

The docket filings for the Facebook Warrant reveal that, on January 18, 2017, the Virginia address at which Mr. Boyne was believed to reside was searched on the order of a federal judge sitting in the Eastern District of Virginia.  (*See* Doc. No. 6 at 1) (citing E.D. Va. Doc. No. 1:17SW14).  The filings also indicate that, on or about May 24, 2017, Mr. Boyne moved to unseal the other District of Connecticut search warrant cases[4] related with the Facebook Warrant, though he did not move to unseal the Facebook Warrant case until June 5, 2017.  (*Id.* at 1-2; Doc. No. 9).  The government did not oppose unsealing, noting that Mr. Boyne was present at the time the search warrant was executed and thus was already aware of the ongoing investigation.  (Doc. No. 6 at 1).

On July 27, 2017, Mr. Boyne filed a motion for sanctions against an Assistant United States Attorney, the United States Attorney, the FBI special agent who was the affiant for the 2016 Warrants and the magistrate judge who had issued the 2016 Warrants.  (Doc. No. 13).  The motion requested "the court to sanction players in this case for violation of the First and Fourth Amendments, in violation of the people's constitutional rights and violation of personal oaths of

---

[4] These cases include 3:16-mj-691(JGM), 3:16-mj-692(JGM), and 3:16-mc-185(JGM).

office." (*Id.* at 1). The motion sought to invoke the "inherent power" of the Court to "sanction the unscrupulous actors who conspire to defeat the Constitution and its pesky amendments." (*Id.* at 4). Mr. Boyne's motion also demanded a $10,000 fine, at minimum, be levied upon the named individuals and sought unexplained "patriotic remedies" for alleged violations of his First Amendment rights.[5] (*See Id.* at 2, 4-5).

On October 5, 2017, then-United States Magistrate Judge Sarah A.L. Merriam denied Mr. Boyne's motion in an identical five-page ruling docketed in each 2016 Warrant case. (*See* Doc. No. 16) (the "2017 Ruling"). Thereafter, Mr. Boyne filed two "Motions for Article III Judicial De Novo Review." (Doc. Nos. 17, 18). On October 30, 2017, the Court (Shea, J.) also denied Mr. Boyne's motion for sanctions for the same reasons set forth in the 2017 Ruling and adopted and incorporated that decision in full. (Doc. No. 22). The Court's order further provided:

> Mr. Boyne has not shown that the Magistrate Judge's order is clearly erroneous or contrary to law. 28 U.S.C. Sec. 636(b)(1)(A), although I would reach the same result even if the Magistrate Judge's ruling was a recommended ruling and this matter was subject to de novo review. Relief of the sort Mr. Boyne is seeking, including his request for the disclosure of a file of the Federal Bureau of Investigation, is not available in this proceeding, which is neither a civil action nor a criminal prosecution.

(*Id.*).

On November 7, 2017, the Court (Shea, J.) again responded to another mailed submission captioned "Notice of Discovery Dispute" apparently submitted by Mr. Boyne. (Doc. No. 24). The Court again "advised" Mr. Boyne that "that he [was] not entitled to discovery in this action, which is not a civil action" and warned him that further attempts to file discovery motions may result in an injunction and that he should otherwise raise such issues in a separate civil action. (*Id.*).

---

[5] Mr. Boyne also argued that the Virginia search warrant was not supported a by probable case, an argument also dismissed by the Court. (Doc. No. 16 at 3).

4

B.      **The 2022 § 2703(d) Orders and Instant Motion for Sanctions**

On January 24, 2022, the government submitted its first § 2703(d) application in the instant case.  This application sought records and information from three entities: (1) GlowHost.com, LLC, (2) Twitter, Inc., and (3) Google LLC (each a "Provider" and, collectively, the "Providers"). (*See* 3:22-mj-113 at Doc. No. 1).[6]  The application sought records and other information associated with certain accounts hosted by the Providers.  (*See generally* Attachment A to Doc. Nos. 2, 3, 4). Like the 2016 Warrants, these orders authorized the disclosure of information from certain Twitter accounts – including ones for the handles @nuttiestjudge and @nutttiestjudge – and the Gmail account "charlotteobserver1@gmail.com" in connection with potential violations of the same cyberstalking and interstate threat statutes.  (Doc. No. 1 at 1-3).

The undersigned granted the application by issuing three separate orders as to each Provider.  (Doc. Nos. 2, 3, 4).   Each order additionally contained a non-disclosure provision prohibiting the Providers from disclosing the existence of the government's application, or the existence of the Court's order, to the subject accountholder(s) until January 24, 2023.  (*See* Doc. Nos. 2 at 1-2; Doc. No. 3 at 1-2; Doc. No. 4 at 1-2).  That same day, the undersigned also granted the government's motion to seal all of the documents, including the application and orders, until January 24, 2023.  (Doc. No. 6).

On March 22, 2022, the government filed an additional § 2703(d) application in this matter seeking disclosure of information and records regarding certain accounts from three additional Providers: (1) Cox Communications, Inc., (2) Comcast Cable, and (3) Verizon Wireless.  (Doc. No. 9).  On March 23, 2023, the undersigned granted this application and the accompanying motion to seal and issued three § 2703(d) orders.  (Doc. Nos. 11, 12, 13, 14).   Like the January

---

[6] Hereafter all docket entries refer to this case, 3:22-mj-113, unless otherwise noted.

5

2022 orders, the Court's orders granting the government's application also contained non-disclosure provisions ending on March 21, 2023.  (*See generally id.*).

On January 25, 2023, noting that that the Court's January 24, 2022, order sealing the matter had expired, the Court issued an order to show cause ordering that, on or before February 8, 2023, the government file a written motion requesting either that the sealed documents be unsealed or that these documents remain sealed, with the required showing to support such a request.  (Doc. No. 15).  On January 30, 2023, the movant, appearing *pro se*, filed a motion to unseal.  (Doc. No. 17).  On January 31, 2023, the government moved to unseal all of the sealed documents in this matter, and the undersigned granted the motion the same day, rendering the movant's motion to unseal moot.  (*See* Doc. Nos. 19, 20, 21).

On February 9, 2023, the movant filed the instant motion for sanctions.  (Doc. No. 22).

## II.  DISCUSSION

### A.  The Motion for Sanctions Fails

Akin to his 2017 motion for sanctions, the movant charges that the Assistant United States Attorneys in this case are subject to sanctions under Fed. R. Civ. P. 11 for alleged "malicious abuse of office, fraud upon the court, and willful unethical behavior" involving purported "illegal hunting of free speech, deprivation of rights, abuse of process, and downright un-American conduct, by private agenda, in violation of First Amendment protections[.]"  (Doc. No. 22 at 1-2).  The movant accuses the prosecutors of making various confusing "misrepresentations," namely that the applications at issue were "presented for improper purpose of hunting pure protected political speech, effort to chill expression, a detriment to society, intent to harass political critics on behalf of state actors in misuse of federal office[.]"  (*Id.* at 2).  The motion also charges the prosecutors

6

and other individuals[7] with generally perpetrating a "fraud upon the court." (*Id.* at 3). However, the only relief requested appears to be a demand that the alleged "misconduct be referred to [an] Article III judge for sanction and attorney discipline" pursuant to "rules, law, and inherent power of the court[.]" (*Id.* at 4). Lastly, the movant contends that the undersigned is disqualified under 28 U.S.C. § 455 "as there is reasonable questions of [] impartiality, nor can he sit in review of challenge to his own warrants." (*Id.* at 3).

For substantially the same reasons provided by the Court in 2017, the Court again finds that the movant's request is entirely without basis in law or fact and therefore denies it.

*First*, as noted previously by the Court, a § 2703(d) order is generally the product of a miscellaneous, *ex parte* proceeding which itself is neither civil nor criminal in nature, even if the purpose of the order or warrant is to ultimately pursue criminal charges.  *See* Part I.A., *supra*.  *See In re Leopold to Unseal Certain Elec. Surveillance Applications & Ords.*, 964 F.3d 1121, 1124 (D.C. Cir. 2020) ("In federal court, the government may obtain an [§ 2703(d) order] 'using the procedures described in the Federal Rules of Criminal Procedure.'") (quoting 18 U.S.C. § 2703(a)).  *See cf. United States v. Falvey*, 540 F. Supp. 1306, 1313 (E.D.N.Y. 1982) ("The finding of probable cause for a search warrant in a criminal case is commonly made *ex parte* by a magistrate.")  *See also Application of Russo,* 19 F.R.D. 278, 281 (E.D.N.Y. 1956), *aff'd sub nom. Russo v. United States*, 241 F.2d 285 (2d Cir. 1957) (opining that a "motion to suppress was a miscellaneous proceeding, being neither civil nor criminal").  Accordingly, to the extent that the movant seeks redress for any alleged constitutional harms, a motion for sanctions is "not the proper vehicle" to do so.  2017 Ruling at 3.  Rather, "the proper means by which to address any such

---

[7] The movant additionally ascribes alleged fraudulent conduct to other individuals including a former United States Attorney, the entire Connecticut United States Attorney's office, and another Connecticut state court judge, but he does not appear to demand any sanctions be imposed upon them. (*See* Doc. No. 22 at 3).

alleged violation(s) is by filing a civil lawsuit." *Id.  See cf. In the Matter of a Warrant for All Content & Other Info. Associated with the Email Acct. xxxxxxx gmail.com Maintained at Premises Controlled By Google, Inc.*, 33 F. Supp. 3d 386, 401 (S.D.N.Y. 2014), *as amended* (Aug. 7, 2014) ("We believe that court processes available following the execution of a warrant, such as a suppression motion, a motion under Rule 41(g), and the availability of civil actions for damages, provide the appropriate mechanisms for an individual to challenge the Government's execution of a warrant.").

*Second*, "the Second Circuit has held that a non-party generally lacks standing to seek Rule 11 sanctions."  *Braun ex rel. Advanced Battery Techs., Inc. v. Zhiguo Fu*, No. 11CV04383 CM DF, 2015 WL 4389893, at *23 (S.D.N.Y. July 10, 2015) (citing *New York News, Inc. v. Kheel*, 972 F.2d 482, 486 (2d Cir.1992)).  *See also Pinpoint IT Servs., L.L.C. v. Atlas IT Exp. Corp.*, 802 F.Supp.2d 691, 694 (E.D. Va. 2011) (following *Kheel*, and holding that a non-party does not have standing to move for Rule 11 sanctions, even if that non-party was mentioned in a memorandum filed with the court).  Thus, while the motion for sanctions does not appear to demand that any monetary penalties or "nonmonetary directives" be imposed, *see* Fed. R. Civ. P. 11(c)(4), even if did, this Court could not (and would not) grant them.   *See* 2017 Ruling at 4 (holding same).

*Third*, the movant's invocation of this Court's "inherent power" to refer the alleged misconduct to an Article III judge to impose sanctions and attorney discipline fails to satisfy the "particularized showing of bad faith" which would "justify the use of the court's inherent power."  *United States v. International Bhd. of Teamsters, Chauffers, Warehousemen and Helpers of Am., AFL–CIO,* 948 F.2d 1338, 1345 (2d Cir.1991); *accord Royal Indian Raj Int'l Corp. v. Domains by Proxy, Inc.*, No. 08 CIV. 3445 JGK, 2011 WL 2946367, at *3 (S.D.N.Y. July 20, 2011).  "A finding of bad faith . . . must be supported by a high degree of specificity in the factual

8

findings." *Hernandez v. Sikka*, No. 17-CV-4792, 2019 WL 1232092, at *4 (E.D.N.Y. Mar. 15, 2019) (quoting *Huebner v. Midland Credit Mgmt., Inc.*, 897 F.3d 42, 55 (2d Cir. 2018)) (internal quotation marks and alteration omitted).  Here, the movant's filing contains nothing but bald accusations and conclusory statements about alleged "misrepresentations" made by the prosecutors.  (*See* Doc. No. 22 at 2).

*Fourth*, the movant has failed to establish any other authority or rule that would allow, much less require or persuade, this Court to "refer" or transfer this magistrate judge proceeding to a district judge.[8]  Accordingly, the movant also necessarily fails to establish how this Court could provide him the only redress he actually seeks, and, consequently, he fails to demonstrate constitutional standing as well.  *See Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992) (holding that standing requires that a plaintiff must: (1) have suffered an injury in fact; (2) that is fairly traceable to the challenged action of the defendant; and (3) *that will likely be redressed by a favorable decision* and that the absence of any one of these three elements defeats standing) (emphasis added); *Franklin v. Massachusetts*, 505 U.S. 788, 825 (1992) (Scalia, J. concurring in part) ("Redressability requires that the court be able to afford relief *through the exercise of its power*[.]") (emphasis in original).

---

[8] 28 U.S.C. § 636(a)(1) vests this court with "all powers and duties conferred . . . by the Rules of Criminal Procedure." This includes the granting of traditional search warrants and § 2703(d) orders.  *See* FED. R. CRIM. P. 41; 18. U.S.C. § 2703(a) (a governmental entity applies for a § 2703(d) warrant "using the procedures described in the Federal Rules of Criminal Procedure"); *United States v. Conley*, 342 F. Supp. 3d 247, 274 (D. Conn. 2018) ("Ultimately, it is the magistrate judge's responsibility to determine whether a warrant comports with the requirements of the Fourth Amendment.").  Thus, as the Court opined in the 2016 Warrant cases, *see* Part I.A *supra*, an order granting a § 2703(d) order is not a recommended ruling and is subject to "clearly erroneous or contrary to law" review.  28 U.S.C. §636(b)(1)(A).

### III. CONCLUSION[9]

For the reasons discussed above, the movant's motion for sanctions is **DENIED**. The movant is again reminded that if he wishes to obtain relief from the Court of the type he appears to be seeking, he must do so in the appropriate manner, *i.e.*, by commencing a civil action by filing a complaint that complies with Rule 8 of the Federal Rules of Civil Procedure. Because the movant has recently and repeatedly contacted the Court and Court staff by email and phone, he is advised that any communications with the Court, and any requests for relief, shall be made by a filing on the docket. All such filings must comply with the Court's rules, which are available on the Court's website. The Court does not accept telephonic or other informal communications from parties, except in the context of settlement discussions, which are not occurring in this matter.

It is so ordered this 22 day of February 2023, at New Haven, Connecticut.

---

[9] The movant maintains that the undersigned is "disqualified from this matter" pursuant to 28 U.S.C. § 455 "as there is reasonable questions of [] impartiality, nor can he sit in review of challenge to his own warrants." (Doc. No. 22 at 3). "Subsection (a) of 28 U.S.C. § 455 provides that judges 'shall disqualify [themselves] in any proceeding in which [their] impartiality might reasonably be questioned.'" *United States v. Lovelier*, 954 F.2d 811, 814 (2d Cir. 1992) (quoting 28 U.S.C. § 455(a)). "[R]ecusal motions are committed to the sound discretion of the district court[.]" *United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992). "The question is whether an objective and disinterested observer, knowing and understanding all of the facts and circumstances, could reasonably question the court's impartiality." *S.E.C. v. Razmilovic*, 738 F.3d 14, 29 (2d Cir. 2013), *as amended* (Nov. 26, 2013). In the context of search warrants, courts have found that recusal is not necessary so long as the magistrate judge's decision was "based on an impartial consideration of the testimony and the physical evidence presented at the hearing" and "there is no suggestion that the magistrate considered any extrajudicial source of knowledge or had any personal bias or prejudice." *United States v. Slay*, 714 F.2d 1093, 1094-95 (11th Cir. 1983) (denying a criminal defendant's argument that § 455 precluded the same magistrate who issued a search warrant from hearing the suppression motion based upon that warrant); *accord United States v. Perry*, No. 06-20172-BC, 2007 WL 1017570, at *18 (E.D. Mich. Apr. 3, 2007). *See Henry v. United States, No*. 1:08-CR-83-1, 2014 WL 10518640, at *8 (N.D.W. Va. Nov. 21, 2014), *report and recommendation adopted*, No. 1:08CR83-1, 2015 WL 5972428 (N.D.W. Va. Oct. 14, 2015) ("Several courts have held that a judge need not disqualify himself or herself for having some familiarity with a case from authorizing search warrants."); *United States v. Helton*, 314 F.3d 812 (6th Cir. 2003) (upholding magistrate judge's decision not to recuse himself merely because he had issued the challenged search warrant). *See also U.S. v. Lawson*, 780 F.2d 535 (6th Cir.1985) (finding it was not improper for same judge who originally authorized wiretap to make suppression decision with regard to intercepted material); *U.S. v. Jones*, 801 F.2d 304 (8th Cir.1986) (party seeking recusal of issuing magistrate judge must show personal bias or prejudice stemming from extrajudicial source). Here, the movant's filing is devoid of any factual matter or inference "suggesting [an] extrajudicial source of knowledge or [] any personal bias or prejudice." *Slay*, 714 F.2d at 1095. Accordingly, any such motion for recusal is denied. "A district court would review a magistrate judge's refusal to recuse him or herself for abuse of discretion." *Tsabbar v. Eason*, 305 F. App'x 680, 682 (2d Cir. 2008).

   /s Robert M. Spector
Robert M. Spector,
United States Magistrate Judge